# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## CIVIL DIVISION

| | |
|---|---|
| Gabriel Jesus Jimenez, Miguel Angel Lopez, Rudy Javier Souto Vieira, Jorge Luis Ruiz Blanco, Nelson Jose Lacret, Fernando Enrique Alarcón, Jim Robert Carrizales, José Angel Freitas Vargas, Rafael Alberto Vielma Baptista, and Jesus Javier Rangel Telles <br><br> Plaintiffs, <br><br> v. <br><br> JAC CONSTRUCTION INC., JCH FRAMING INC., JOSE ANGEL ARGUETA, MARIA CUAYA, and HENRY BONILLA <br><br> Defendants. | Civil Action <br> No: 20-CV-11797 |

## PLAINTIFFS' COMPLAINT & JURY DEMAND
## PRELIMINARY STATEMENT

1. Plaintiffs are ten (10) construction workers from Venezuela who in 2018 were recruited and hired jointly by Defendants to work at construction sites in various states, including Michigan. Plaintiffs were wholly dependent on Defendants for transportation, housing, and their wages. Plaintiffs worked for Defendants six to seven days a week, 10 to 12-hour days but were not paid for all the hours they worked and were not paid an overtime rate. Defendants made Plaintiffs purchase their own tools of the trade, including required safety equipment. Throughout their employment of Plaintiffs, Defendants willfully failed to pay them on time and failed to provide Plaintiffs with contemporaneous and accurate wage statements. Plaintiffs complained to Defendants regarding the pay issues and Defendants continually made false promises of eventual payment. Defendants' pattern and scheme of late lump sum payments, not providing wage

-1-

statements, promises of eventual payment, and control over Plaintiffs' transportation and housing caused Plaintiffs to continue working for Defendants. Defendants owed Plaintiffs weeks of wages and never paid the required overtime premium for hours worked over 40 in a week. To date, Defendants have not paid Plaintiffs for all the work they performed for Defendants, despite Plaintiffs repeated attempts at recuperating their unpaid wages.

2.  Plaintiffs bring this action to recover actual and liquidated damages for unpaid minimum wages, unpaid overtime wages; state contract claims, and various provisions of applicable state law, from Defendants JAC CONSTRUCTION, INC., an Indiana domestic corporation ("JAC"), JCH FRAMING, INC., an Indiana domestic corporation ("JCH"), and JOSE "CHANI" ANGEL ARGUETA, an individual; MARIA CUAYA, an individual; and HENRY BONILLA, an individual, (JAC, JCH, JOSE "CHANI" ANGEL ARGUETA, MARIA CUAYA, and HENRY BONILLA, collectively, "Defendants").

**JURISDICTION AND VENUE**

3.  The Court has original subject matter jurisdiction over Plaintiffs' claims under the Fair Labor Standards Act (FLSA) pursuant to 29 U.S.C. § 216(b), 18 U.S.C. § 1595(a), as well as federal question jurisdiction under 28 U.S.C.§ 1331.

4.  The Court has diversity jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332 as the matter involves parties of different states and the amount in controversy exceeds $75,000.

5.  The Court's jurisdiction over supplemental state law claims is proper under 28 U.S.C. § 1367 as they arise from the same case and controversy which occurred in Michigan.

6.  Venue is proper in this Court under 28 U.S.C. § 1391(b) as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, specifically, in Macomb County, Michigan.

## PARTIES

### Plaintiffs

7. Plaintiffs are Venezuelan nationals who were recruited and hired by the Defendants at various times between 2017 to 2018.

8. At all relevant times, Plaintiffs were employees of the Defendants as defined in 29 U.S.C. § 203(e) of the FLSA.

9. Plaintiffs worked at construction sites overseen and managed by Defendants in various states including Michigan, Tennessee and Alabama.

10. In 2018, all Plaintiffs worked at a construction site located at 51760 Gratiot Ave., New Baltimore, Michigan 48051 (the "Michigan Worksite).

11. Plaintiff Gabriel Jesus Jimenez is an individual residing in Pontiac, Michigan. He worked for Defendants at the Michigan Worksite from May of 2018 until June 7, 2018.

12. Plaintiff Fernando Enrique Alarcon is an individual residing in Zulia, Venezuela. He worked for Defendants at the Michigan Worksite from May 8, 2018 until June 7, 2018.

13. Plaintiff Jesus Javier Rangel Telles is an individual residing in Zulia, Venezuela . He worked for Defendants at the Michigan Worksite from April 9, 2018 to June 7, 2018.

14. Plaintiff Jim Robert Carrizales is an individual residing in Carabobo, Venezuela. He worked for the Defendants at the Michigan Worksite from April 20, 2018 to June 7, 2018.

15. Plaintiff Jorge Luis Ruiz Blanco is an individual residing in Portuguesa, Venezuela. He worked for Defendants at the Michigan Worksite from April 5, 2018 to June 7, 2018.

16. Plaintiff Jose Angel Freitas Vargas is an individual residing in Carabobo, Venezuela. He worked for the Defendants at the Michigan Worksite from May 13, 2018 to June 7, 2018.

17. Plaintiff Miguel Angel Lopez is an individual residing in Naperville, Illinois. He worked the Defendants at the Michigan Worksite from May of 2018 to June 7, 2018.

18. Plaintiff Nelson Jose Lacret is an individual residing in Antofagasta, Chile. He worked for the Defendants at the Michigan Worksite from April 9, 2018 to June 7, 2018.

19. Plaintiff Rafael Alberto Vielma Baptista is an individual residing in Tamaulipas, Mexico. He worked for the Defendants at the Michigan Worksite from May 27, 2018 to June 7, 2018.

20. Plaintiff Rudy Javier Souto Vieira is an individual residing in Portuguesa, Venezuela. He worked for the Defendants at the Michigan Worksite from May 19, 2018 to June 7, 2018.

21. At all relevant times, Plaintiffs were engaged in interstate commerce or in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce, as defined in 29 U.S.C. § 203 of the FLSA as Defendants assigned them to work at construction sites in various states, such as Tennessee, Alabama, and Michigan.

## Defendants

### Defendants JAC and Jose Angel Argueta

22. JAC Construction, Inc. (hereinafter "JAC") is an Indiana domestic corporation with its principal place of business located in 432 S. Dearborn St., Indianapolis, IN 46201.

23. Jose Angel Argueta (aka "Chani') is an individual who is recorded as the President and Resident Agent of JAC. Upon information and belief, Defendant Argueta resides in Indiana.

24. Defendant Argueta maintained day-to-day operational control of JAC as he had the authority to hire and fire JAC's employees, including Plaintiffs, set JAC's employee's schedules, including Plaintiffs', and supervised Plaintiffs' work.  Defendant Argueta had authority to set policy for the Defendant JAC concerning establishing wage rates, the tracking of hours, and the payment of wages to employees.

25. Upon information and belief, Defendants JAC and Argueta obtained a contract to provide construction services at the Michigan Worksite for a general contractor.

26. JAC and Argueta transported Plaintiffs Gabriel Jesus Jimenez, Miguel Angel Lopez, , Jorge Luis Ruiz Blanco, Nelson Jose Lacret, Jim Robert Carrizales, José Angel Freitas Vargas, Rafael Alberto Vielma Baptista, and Jesus Javier Rangel Telles from Tennessee to Michigan in order to work at the Michigan Worksite.

27. JAC has over 20 employees and upon information and belief, generates over $500,000 in gross sales.

### Defendants JCH, Maria Cuaya, and Henry Bonilla

28. JCH Framing, Inc. ("JCH") is an Indiana corporation with its principal place of business registered as 553 N. Temple Ave., Indianapolis, IN 46201.

29. Maria Cuaya is an individual, the Registered Agent, President and Co-Owner of JCH.

30. Henry Bonilla is an individual, a supervisor for the company, spouse to Maria Cuaya, and upon information and belief, a co-owner of JCH.

31. Upon information and belief, Defendant Cuaya and Bonilla reside in Indiana.

32. Henry Bonilla oversaw significant aspects of the day-to-day operations of JCH, such as: supervising Plaintiffs on-site at the Michigan Worksite; setting Plaintiffs' work schedules; hiring and firing; and setting Plaintiffs' hourly rates.

33. Upon information and belief, during the relevant period, Maria Cuaya oversaw significant aspects of the day-to-day operations of JCH and accounting operations of JCH Defendant Cuaya distributed wage payments, signed company checks, and tracked Plaintiffs' hours of employment, hired individuals to work for JCH. Defendant Cuaya had authority to set policy for the Defendant

JCH concerning establishing wage rates, the tracking of hours, and the payment of wages to employees.

34. Upon information and belief, JCH employs over 65 employees yearly and generates over $500,000 in sales annually.

35. At all relevant times, Defendants jointly employed Plaintiffs within the meaning of 29 U.S.C. §§ 203(d) and (g) of the FLSA.

## FACTUAL ALLEGATIONS

36. At various times in 2017 and 2018, Defendants recruited Plaintiffs to work as construction laborers in the United States.

37. Upon information and belief, Defendants placed advertisements and posts on Facebook regarding construction jobs available with Defendants.

38. Plaintiffs Nelson Lacret, and Rafael Vielma Baptista responded to those Facebook ads and were subsequently hired by Defendants.

39. Defendants asked Plaintiff Jimenez and Plaintiff Lacret to recruit workers for them and subsequently Defendants hired Plaintiffs Fernando Urbina and Jesus Rangel Telles.

40. Defendants transported Plaintiffs to various worksites in Alabama, Tennessee, and finally Michigan.

41. By, on or about May 15, 2018, Defendants had brought all Plaintiffs to Michigan and housed them in a hotel located at 7454 Convention Blvd., Warren, MI 48092 ("Michigan Hotel").

42. In Michigan, Plaintiffs were forced to share small cramped hotel rooms, paid for by the Defendants but registered to the Plaintiffs' names; four Plaintiffs to a room and two to each bed.

43. Defendants made it impractical for Plaintiffs to move freely as they provided the sole source of transportation to the Plaintiffs.

44. Defendants transported Plaintiffs between the Michigan Worksite and the Michigan Hotel.

45. While working in Michigan, Plaintiffs worked Monday through Saturday, from approximately 7 am to 6 pm, with a one-hour unpaid lunch break, for an average of 50 to 60 hours per week.

46. Defendants required each Plaintiff to purchase their own protective equipment, such as hard hats, safety vests, safety goggles, and construction boots, as well as tools such as hammers, measuring tape, and carpenter's squares.

47. Throughout Plaintiffs' employment, Defendants only paid Plaintiffs an hourly rate for all hours worked and did not pay Plaintiffs an overtime premium.

48. During their recruitment, Defendants promised to pay Plaintiffs the following hourly rates:

   a. Gabriel Jimenez, $16 per hour;
   b. Nelson Lacret, $16 per hour;
   c. Fernando Alarcon, $16 per hour;
   d. Jim Carrizales, $13 per hour;
   e. Jose Freites Vargas, $13 per hour;
   f. Miguel Lopez, $13 per hour;
   g. Jesus Ranges Telles, $13 per hour which would then be increased to $16 per hour after the first month;
   h. Jorge Ruiz, $15 per hour;
   i. Rudy Souto Vieira, $25 per hour;
   j. Rafael Vielma Baptista, $13 per hour.

49. Defendants wage payments to Plaintiffs were unpredictable, infrequent, and difficult to track.

50. Defendants never provided Plaintiffs with a wage statement and only paid Plaintiffs, if at all, in cash or using a company check drawn from Chase Bank and signed by Maria Cuaya.

51. Although payday was supposed to be on Friday, there were various times in which the Defendants paid the Plaintiffs late up to and including the middle of the week after pay had come due.

52. For Plaintiffs who were unable to cash checks, Defendants charged Plaintiffs a 2% fee for cashing Defendant's checks to Plaintiffs for their wage payments.

53. On several occasions, while in Alabama, Tennessee, and finally while in Michigan, Plaintiff Gabriel Jimenez complained to Maria Cuaya regarding his unpaid wages.

54. Defendant Cuaya told Plaintiff Gabriel Jimenez that Jose "Chani" Angel Argueta was responsible for paying out wages.

55. On several occasions, including while in Michigan, Plaintiff Jorge Luis Ruiz Blanco complained to Maria Cuaya regarding his unpaid wages.

56. Defendant Cuaya acknowledged the unpaid wages owed to Plaintiff Jorge Luis Ruiz Blanco and promised to pay him the owed wages in cash but never did.

57. While working in Michigan, Plaintiff Rudy Javier Souto Vieira complained to Maria Cuaya on or about four occasions for lack of payments to which Maria Cuaya admitted to owing Plaintiff Rubdy Javier Souto Viera but never subsequently paying the earned wages.

58. While in Michigan, as well as in Alabama and Tennessee, Plaintiff Nelson Jose Lacret complained to Maria Cuaya, Henry Bonilla, and Jose "Chani" Angel Argueta nearly every Friday for a month about his unpaid wages and late payments.

59. Plaintiff Fernando Enrique Alarcón complained to both Maria Cuaya and Jose "Chani Angel Argueta on at least two occasions regarding his unpaid wages.

60. Plaintiff Jorge Luis Ruiz Blanco complained to Jose "Chani" Angel Argueta on two or three separate occasions about late payments.

61. Plaintiffs were supervised daily by Defendant Henry Bonilla and Defendant Jose Angel Argueta at the Michigan Worksite.

62. Defendants Bonilla and Argueta assigned Plaintiffs daily tasks, maintained their work schedules, and authorizing wage payments throughout Plaintiffs' employment with Defendants.

63. Defendant Henry Bonilla also kept a purported written log of the Plaintiffs' work time. The log however, was inaccurate and did not accurately reflect the actual hours that Plaintiffs' were required to work.

64. Plaintiff Rudy Javier Souto Vieira complained to Jose "Chani" Angel Argueta on or about six occasions regarding inaccuracies in the Defendants' time records.

65. To date Plaintiffs have not been paid for all hours worked at the Michigan Worksite and other locations to which they were assigned by the Defendants.

### Count 1: Violations of 29 U.S.C. §§ 206(a) and 215(a)(3)
### (FLSA Minimum Wage Provision)

66. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

67. The FLSA requires employers to pay employees the federal minimum wage, which during the relevant time period was $7.25 per hour. 29 U.S.C. §§ 206(a), 215(a)(2).

68. The FLSA also provides that employers must provide its employees with a statement of the hours worked and the wages paid. *See* 29 C.F.R. §1620.32.

69. The Defendants repeatedly violated 29 U.S.C. §§ 206(a) and 215(a)(2), by failing to pay Plaintiffs the applicable federal minimum wage during their employment with the Defendants.

70. During their employment, Defendants failed to pay the Plaintiffs for the following weeks of work performed:

> a. Gabriel Jimenez, 9 weeks of worked performed at approximately 50-60 hours per week;
> b. Nelson Lacret, 8 weeks of work performed at approximately 50-60 hours per week;

    c. Fernando Alarcon, 4 weeks of work performed at approximately 50-60 hours per week;
    d. Jim Carrizales, 7 weeks of work performed at approximately 50-60 hours per week;
    e. Jose Freites Vargas, 2 weeks of work performed at approximately 10-30 hours per week;
    f. Miguel Lopez, 5 weeks of work performed at approximately 50-60 hours per week;
    g. Jesus Ranges Telles, 8 weeks of work performed at approximately 50-60 hours per week;
    h. Jorge Ruiz, 1.75 weeks of work performed at approximately 50-60 hours per week;
    i. Rudy Souto Vieira, 3 weeks of work performed at approximately 50-60 hours per week;
    j. Rafael Vielma Baptista, 1 week of work performed at approximately 50-60 hours per week.

71. The Defendants violated the FLSA in part by failing to reimburse Plaintiffs for protective equipment costs. These costs, which were incurred primarily for the benefit of the Defendants, resulted in FLSA minimum wage violations when the Defendants failed to reimburse each Plaintiff in his respective first pay period.

72. The Defendants violated the FLSA in part by failing to pay Plaintiffs the federal minimum wage for each hour that Plaintiffs worked.

73. Instead, the Defendants infrequently paid Plaintiffs with checks and/or cash which did not include the entire amount of pay earned or did not pay them at all.

74. Despite receiving multiple complaints from all ten (10) Plaintiffs regarding their unpaid wages, and acknowledging the owed wages, Defendants willfully failed to pay each Plaintiff for all hours worked.

75. The Defendants' repeated failures to pay Plaintiffs the federal minimum wage were willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a), as evidenced by their promises to Plaintiffs to reimburse costs and pay wages, repeated failures to pay Plaintiffs wages at all, and acknowledgement by Defendants of the wages owed.

76. As a consequence of the Defendants' willful violations of the FLSA, Plaintiffs are entitled to recover their unpaid minimum, plus an additional equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b), attorneys fees, costs and interest.

### Count 2: Violations of 29 U.S.C. §207(a)(1) (FLSA overtime provisions)

77. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

78. The FLSA provides that employees are entitled to one-and-one-half (1.5) times their regular rate of pay for work done beyond forty (40) hours per week.

79. Plaintiffs were scheduled to work Monday through Saturday from 7 am to 6 pm, for an average of 50 to 60 hours per week.

80. Plaintiffs, except for Plaintiff Jose Freitas Vargas, worked over 40 hours in a week while employed by Defendants.

81. Throughout the duration of Plaintiffs' employment, Defendants failed to pay the Plaintiffs for the hours worked in excess of forty (40) per week.

82. The Defendants repeatedly violated 29 U.S.C. §§ 207(a)(1), by failing to pay Plaintiffs for all overtime hours and at the applicable overtime rates during their employment with the Defendants.

83. Instead when Defendants opted to pay Plaintiffs, they only paid them at their regular rate of pay and failed to pay them an overtime premium for all hours worked over 40 in a week.

84. The Defendants knew of their obligations to pay wages to the Plaintiffs; reminded by the Plaintiffs themselves on multiple occasions, yet still purposefully ignored their legal obligation to pay wages.

85. As a consequence of the Defendants' willful violations of the FLSA, Plaintiffs are entitled to recover their overtime wages, plus an additional equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b), plus attorneys' fees, costs and interest.

### Count 3: Violations of Michigan's Minimum Wage Provision of the Workforce Opportunity Wage Act (WOWA)

86. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

87. The Workforce Opportunity Wage Act ("WOWA"), MCL §408.412, provides that an employer must not pay an employee at a rate less than is prescribed in the Act.

88. Each Plaintiff was an employee of Defendants during 2018 within the meaning of §408.412(c) of WOWA.

89. Defendants employed each Plaintiff within the meaning of §408.12(b) of WOWA.

90. Beginning on January 1, 2018, the minimum wage rate in Michigan was $9.25 per hour. *See* MCL §408.414(e).

91. Defendants failed to pay each Plaintiff at least the minimum wage for every compensable hour they worked for several weeks of work. Specifically:

   a. Gabriel Jimenez, 9 weeks of worked performed at approximately 50-60 hours per week;
   b. Nelson Lacret, 8 weeks of work performed at approximately 50-60 hours per week;
   c. Fernando Alarcon, 4 week of work performed at approximately 50-60 hours per week;
   d. Jim Carrizales, 8 weeks of work performed at approximately 50-60 hours per week;
   e. Jose Freites Vargas, 4 days of work performed at approximately 10 hours per day;
   f. Miguel Lopez, 5 weeks of work performed at approximately 50-60 hours per week;
   g. Jesus Ranges Telles, 8 weeks of work performed at approximately 50-60 hours per week;

      h. Jorge Ruiz, 9 weeks of work performed at approximately 50-60 hours per week;
      i. Rudy Souto Vieira, 3 weeks of work performed at approximately 50-60 hours per week;
      j. Rafael Vielma Baptista, 1 weeks of work performed at approximately 50-60 hours per week.

92. WOWA also provides that employers must provide its employees with a statement of the hours worked and the wages paid. *See* MCL §408.417.

93. Defendants failed to provide paystubs containing their hours worked and wages paid to Plaintiffs.

94. The Plaintiffs are entitled to their unpaid minimum wages, plus an additional amount in liquidated damages, together with court costs, reasonable attorneys' fees and interest. *See* MCL §408.419(1).

### Count 4: Violations of MCLS §408.414(a) (WOWA Overtime provisions)

95. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

96. The Workforce Opportunity Wage Act ("WOWA"), MCL §408.414, provides that an employer must pay an employee at a one-and-one-half (1.5) wage rate for all work done in excess of forty (40) hours per week as is prescribed in the Act.

97. Plaintiffs were scheduled to work Monday through Saturday from 7 am to 6 pm, for an average of 50 to 60 hours per week.

98. Plaintiffs worked over 40 hours in a week while employed by Defendants in Michigan.

99. Defendants failed to pay each Plaintiff an overtime premium for every hour worked over 40 in a week. Instead when Defendants opted to pay Plaintiffs, they only paid Plaintiffs their regular rate of pay.

100. The Plaintiffs are entitled to their unpaid overtime wages, plus an additional amount in liquidated damages, together with court costs, reasonable attorneys' fees, and interest. *See* MCL §408.419(1).

## Count 5: Breach of Contract Michigan Law

101. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

102. Under Michigan Law, MCL §600.5807(9), an individual may bring an action to recover money due for breach of contract within 6 years.

103. Plaintiffs entered into an employment contract with Defendants to work for JAC and JCH and in return for their labor, be paid a specific hourly rate for all hours worked.

104. Defendants promised to pay them weekly for all hours worked.

105. Plaintiffs worked for Defendants, including at the Michigan Worksite.

106. The Defendants breached the contract by failing to pay Plaintiffs the promised hourly rate for every compensable hour that they worked.

107. The Defendants breached the contract by failing to pay Plaintiffs their wages due on a weekly basis.

108. The Defendants breached the contract by failing to pay Plaintiffs their overtime wages due on a weekly basis.

109. Plaintiffs are entitled to recover their unpaid wages for all hours worked.

110. Plaintiffs are therefore entitled to actual and consequential damages. Mich. Comp. Laws Ann. § 600.5807(8).

## Count 6: Promissory Estoppel

111. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint, as if they were fully set forth herein.

112. Defendants recruited Plaintiffs to work for them with the promise of construction work and specific hourly rates for each Plaintiff, which were higher than the federal and state hourly rate.

113. Defendants' promises reasonably induced Plaintiffs to leave their residences to work for Defendants and incur costs related to their work with Defendants, such as travel costs and tools of the trade costs.

114. Defendants' promises reasonably induced Plaintiffs to work for Defendants at construction sites in various states, including Michigan from May 2018 until June 2018.

115. Defendants benefited from Plaintiffs work for Defendants at the Michigan Worksite from May 2018 to June 2018 as they failed to pay Plaintiffs for all hour worked.

116. Plaintiffs suffered harm as a result of Defendants' non-payment of wages as they could not afford to pay for their basic necessities and continued to work for Defendants in hopes of eventually being paid for their labor.

117. Defendants promise to pay Plaintiffs their specified hourly rate must be enforced so as to avoid injustice.

## JURY DEMAND

The Plaintiffs demand a trial by jury in the above-captioned matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter Judgment against Defendants jointly and severally, in an amount is fair, just and equitable for the damages so wrongfully sustained by the Plaintiffs including but not limited to damages for:

    A. Unpaid wages;

    B. Unpaid overtime;

    C. Liquidated damages;

    D. Attorneys fees and costs;

    E. Prejudgment and post-judgement interest; and

    F. All other damages allowed in law or equity;

Dated:     July 2, 2020

*/s/ Diana Marin*
Diana E. Marin, Esq. (P18145)
Gonzalo Peralta (308239-Pennsylvania)
Michigan Immigrant Rights Center
15 S. Washington Street, Suite 201
Ypsilanti, MI 48197
p: 734-239-6863
f: 734-998-9125
e: dmarin@michiganimmigrant.org


*/s/ John Philo*
John C. Philo (P52721)
Executive Director & Legal Director
Maurice & Jane Sugar Law Center for Economic & Social Justice
4605 Cass. Ave.
Detroit, MI 48201
p: 313-993-4505
f: 313-887-8470
e: jphilo@sugarlaw.org